# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TIMMY DOUCET**

**VERSUS**

**DARRYL VANNOY,
WARDEN**

**CIVIL ACTION**

**NO.  21-254**

**SECTION "F"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Timmy Doucet ("Doucet"), is a convicted inmate incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  On January 14, 2016, Doucet was charged in Jefferson Parish with aggravated rape of a known juvenile wherein the juvenile was under the age of thirteen in violation of La. Rev. Stat. § 14:42.[2]  Doucet entered a plea of not guilty in the case.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the 14:64.3 claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]St. Rec. Vol. 1 of 12, Bill of Indictment, 1/14/16.

[3]St. Rec. Vol. 1 of 12, Minute Entry, 1/15/16.

The record reflects that S.D.[4], the victim, her brother, A.D., her mother, B.D., and her father, M.D., lived in Carriere, Mississippi.[5]  Doucet is M.D.'s brother.  S.D. was thirteen years old at the time of trial.

S.D. testified that, when she was eight years old, Doucet, who she referred to as "Uncle T-Bird," and his girlfriend, T.P., were visiting S.D.'s family in Mississippi.  S.D. was watching television in her room.  Doucet walked in and began speaking with her.  Doucet suddenly told her to take off her pants, and when S.D. refused, Doucet forced her pants off.  Doucet unzipped his pants and took out his "crotch."  He covered S.D.'s mouth, slapped her, and told her to "shut up." Doucet turned S.D. around, pinning her against the bed, and inserted his "crotch" into her "crotch." S.D. explained that her "crotch" was the part of her body she used to urinate.  S.D. recalled, "[t]hen like it was in there, he didn't move at all."  S.D. recalled that it was painful and that he eventually removed his "crotch."  Doucet told S.D., "Tell anyone what happened and I will beat you up."  He then left her room and went into the living room.

S.D. testified that she was too scared to tell anybody what had happened because she thought that Doucet would beat her up.  S.D. recalled that Doucet sexually abused her other times in her Mississippi home, but she did not recall the details.

S.D. recalled a second incident that occurred when she was eight years old.  On that occasion, S.D. and A.D. were visiting their paternal grandparents' home in Louisiana.  S.D. was sleeping on the floor and A.D. was sleeping on the couch in the living room.  About 6:00 a.m.,

---

[4]The Louisiana courts referred to the minor victims of sexual offenses and their families by their initials in accordance with La. Rev. Stat. § 46:1844(W)(3).  This Court will do the same.

[5]The facts were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Doucet*, 237 So. 3d 598, 601-04 (La. App. 5th Cir. 2017); St. Rec. Vol. 7 of 12, 5th Cir. Opinion, 17-KA-200, pp. 1-6, 12/27/17.

Doucet came in and tried to wake her up.  When she did not wake up, Doucet picked her up, S.D. struggled to get away as she knew he was going to abuse her.

Doucet carried S.D. into a shed in the backyard.  He pinned her over a barrel in the shed, took off her pants, unzipped his pants, and inserted his "crotch" inside of her.  Doucet told S.D. to "shut up" when she screamed.  S.D. recalled that this incident was more painful than the first time. Afterwards, S.D. returned to the house and hid underneath her blanket.  Because she was scared, she did not tell anyone what happened.

S.D. recalled other sexual abuse by Doucet at her grandparents' house, although those incidents occurred mainly in the guest room.  S.D. recalled a few incidences of sexual abuse at her grandparents' house in Jefferson Parish, but testified that more incidences occurred at her house in Mississippi.

S.D. testified that on one occasion her mouth touched Doucet's "crotch" when she was in the bathroom of her home in Carriere.  Doucet sat on the sink and S.D. stood.  She recalled that it made her feel very uncomfortable and made her gag.  Doucet would not allow S.D. to run away.

According to S.D., Doucet made her kiss him a few times on the mouth.  She recalled that Doucet placed his mouth on her "crotch" and breasts on several occasions, and that he sucked on her breasts, which made her feel uncomfortable.

S.D. testified that she was ten years old the last time Doucet "abused her."  Sometime after that, M.D. banned Doucet from the house because Doucet tried to hurt M.D. by attempting to run over him with a car after an argument.

When S.D. was approximately twelve years old, she decided to report the incidents to her mother.  S.D. felt brave enough to tell her mother at that time because they had recently moved. S.D. testified that Doucet did not know where they lived, and she believed that he could not find

her.  S.D. explained that she was happy that she did not have to see Doucet and that she felt better about being able to tell someone what happened

B.D. testified that S.D. told her "Uncle T-Bird" touched her breasts and her "private," and touched her with his penis.  M.D. and B.D. took S.D. to the police station in Mississippi to report the matter.  S.D. gave a statement to the Pearl River County Police Department.  S.D. revealed that Doucet had also abused her at her grandparents' house in Jefferson Parish.  The Pearl River County authorities advised S.D. and her parents that they would need to make a similar report in Jefferson Parish.

S.D. gave a similar statement to Detective Judd Harris of the Jefferson Parish Sheriff's Office.  S.D. was subsequently seen by Dr. Jamie Jackson at Children's Hospital in New Orleans and referred for counseling and services to the Audrey Hepburn Care Center.  S.D. gave a consistent and detailed account of the abuse to each interviewer.

According to B.D., both A.D. and S.D. have Asperger Syndrome.  B.D. testified that their family moved into a house in Carriere, Mississippi in 2009.  They lived in the house when S.D. was between the ages of eight and ten.  S.D.'s paternal grandparents lived at 5049 Richland in Jefferson Parish when S.D. was between eight and ten years old.  B.D. recalled that S.D. and her brother spent the night at their grandparents' home more than twenty times.  B.D. recalled that Doucet "mostly" lived at the home on Richland.  B.D. testified that M.D. banned Doucet from their house because Doucet and T.P. physically fought at their house.

B.D. explained that S.D. had challenges with social skills at school.  B.D. described S.D. as being bluntly honest and very creative.  B.D. testified that S.D. loved to draw, create comic books, write stories, and play video games.  B.D. explained that Japanese animation called "anime"

was S.D.'s favorite thing to draw.  B.D. recalled that S.D.'s comic books were fantasy fiction and child-based and did not represent sexual activity or violence.

M.D. testified that his parents, and, for a short time, Doucet, lived at 5049 Richland.  There were two backyard sheds.  M.D. described one of the sheds as a fourteen foot by forty-foot-long shed with two sections and recalled that there were large water barrels and drums stored in the back section.  M.D. admitted that he banned Doucet from his house because of a violent incident between Doucet and his girlfriend.  During that incident, Doucet almost hit M.D. with a car.

Dr. Jamie Jackson, an expert in the field of child abuse pediatrics, examined S.D. at the Audrey Hepburn Care Center.  S.D. gave a clear history of sexual abuse by Doucet involving penile-vaginal, digital-vaginal, and oral-breast contact when she was between eight and ten years old.  S.D. told Jackson that Doucet shoved "his private" into her "private" and S.D. used a diagram to refer Jackson to the correct body parts.  The examination revealed that S.D. had a normal hymen.  Dr. Jackson testified that an individual could have a normal hymen even with penile-vaginal penetration.

Dr. Jackson testified that it is common for child sexual abuse victims to not report for an extensive period of time after the incidents, a concept known as delayed disclosure.  Dr. Jackson explained delayed disclosure may be due to the naivety of young children, embarrassment, shame, or fear, or threats by the perpetrator or others, or the perpetrator is someone the child knows well, loves, and/or trusts.  Dr. Jackson diagnosed S.D. as having suffered child sexual abuse.

D.D., Doucet's mother, testified that she did not see S.D. and A.D. more than once a month and then only with their parents.  According to D.D., S.D. and A.D. slept over D.D.'s house at 5049 Richland approximately three or four times in ten years.  D.D. did not remember a time when

Doucet and the children slept over on the same night.  D.D. claimed that Doucet did not live with her after 2008.

Doucet testified in his own defense and claimed that he lived with his mother at 5049 Richland from 2005 to 2010.  Doucet denied ever being alone with S.D. and further denied sexually assaulting her.  He specifically denied ever inappropriately touching S.D.  He claimed that he never tried to kiss her and never put his mouth on any part of S.D.'s body.  Doucet admitted visiting with his parents at their home as well as visiting M.D. and B.D. in Mississippi with T.P. and the children.  Doucet recalled that S.D. ran up and hugged him at a wedding in 2014.

In rebuttal, S.D. testified that Doucet did not attend the wedding.  S.D. identified a folder of her drawings with some of her "scary" pictures.  S.D. testified that she had never seen grown-ups having sex.  She specifically denied witnessing any sexual encounter in real life, on television, in a magazine, or from the internet via a computer, a phone, or other gaming device.  S.D. denied being coached.

Doucet was tried by a jury on November 29 through December 1, 2016, and was found guilty as charged.[6]  On December 5, 2016, the Trial Court denied Doucet's motions for new trial and post verdict judgment of acquittal.[7]  On that same day, the Trial Court sentenced Doucet to life imprisonment without the benefit of probation, parole or suspension of sentence.[8]

---

[6]St. Rec. Vol. 1 of 12, Trial Minutes, 11/29/16; Trial Minutes, 11/30/16; Trial Minutes, 12/1/16; Verdict, 12/1/16; St. Rec. Vol. 5 of 12, Trial Transcript, 11/29/16; St Rec. Vol. 6 of 12, Trial Transcript, 12/1/16; St. Rec. Vol. 8 of 12, Voir Dire Transcript, 11/29/16.

[7]St. Rec. Vol. 1 of 12, Sentencing Minutes, 12/5/16; Defendant's Motion for New Trial, 12/5/16; Order, 12/5/16; Defendant's Motion for Post Verdict Judgment of Acquittal, 12/5/16; Order, 12/5/16; St. Rec. Vol. 6 of 12, Sentencing Transcript, 12/5/16.

[8]St. Rec. Vol. 1 of 12, Sentencing Minutes, 12/5/16; Uniform Commitment Order, 12/10/16; St. Rec. Vol. 6 of 12, Sentencing Transcript, 12/5/16.

On direct appeal, Doucet's appellate counsel filed a brief raising a claim that the Trial Court erred in allowing the jury to view S.D.'s drawings during its deliberations when the drawings amounted to testimonial evidence specifically prohibited by the Louisiana criminal code.[9]  Doucet filed a pro se brief raising the following claims for relief: (1) insufficient evidence supported his conviction; (2) the Trial Court erred in allowing the jury to view the victim's drawings during its deliberations when the drawings amounted to testimonial evidence specifically prohibited by the Louisiana criminal code.[10]

On December 27, 2017, the Louisiana Fifth Circuit affirmed the conviction and sentence finding that a rational trier of fact could have found the evidence sufficient to support the defendant's conviction beyond a reasonable doubt, and that the Trial Court committed harmless error in permitting the jury to view an exhibit drawn by the victim.[11]  On October 8, 2018, the Louisiana Supreme Court issued a denial without stated reasons of the related writ application.[12] The United States Supreme Court denied Doucet's petition for writ of certiorari on June 3, 2019.[13] Doucet's conviction and sentence became final that same day.  *See Geisberg v. Cockrell*, 288 F.3d 268 (5th Cir. 2002) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court); *Crutcher v. Cockrell*, 301 F.3d 656,

---

[9]St. Rec. Vol. 7 of 12, Appellate Brief, 17-KA-0200, 6/5/17.

[10]St. Rec. Vol. 7 of 12, Supplemental Pro Se Brief, 17-KA-2022, 8/25/17.

[11]*State v Doucet,*237 So. 3d 598, 604-09 (La. App. 5th Cir. 2017); St. Rec. Vol. 7 of 12, 5th Cir. Opinion, 17-KA-200, at pp. 7-16, 12/27/17.

[12]*State v. Doucet*, 253 So. 3d 789 (La. 2018); St. Rec. Vol. 18 of 12, La. S. Ct. Order, 2018-K-0077, 10/8/18; La. S. Ct. Writ Application, 18 K 77, 1/11/18.

[13]*Doucet v. Louisiana*, 139 S Ct. 2676 (2019); Rec. Doc. 1-4, at pp. 4-45 (La. S. Ct. Writ Application, 12/5/18; Letter, 6/3/19).

657 (5th Cir. 2002) (same); *Hoffman v. Louisiana*, 768 So. 2d 592, 592 (La. 2000) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied).

On May 29, 2020, Doucet filed a counseled application for post-conviction relief asserting the following claims for relief: (1) ineffective assistance of counsel in failing to obtain a medical expert to rebut the State's expert's testimony; (2) ineffective assistance of counsel in failing to investigate *Brady*[14] material; (3) ineffective assistance of counsel in failing to interview witnesses.[15]

On October 23, 2020, the Trial Court denied the application.[16] The Trial Court found that, while Doucet had submitted a post-conviction report by Dr. McCubbin, there was no evidence that he was available to testify at trial or that his proposed testimony would have been admissible.[17] The Trial Court further found that defense counsel had "engaged in serious and protracted labors to exclude the medical testimony and the victim's statements to the doctor."[18] It noted that Dr. Jackson had been accepted as an expert in child abuse pediatrics more than 70 times, and in none of the twelve reported appellate decisions was an expert witness called by the defense.[19] The Trial Court further found that any sexual penetration is sufficient to complete the crime of rape, and that Dr. McCubbin's proposed testimony that S.D.'s hymen would have been damaged if violently

---

[14]*Brady v. Maryland*, 373 U.S. 83 (1963), requires the prosecution produce exculpatory and impeachment evidence.

[15]St. Rec. Vol. 2 of 12, Uniform Application for Post Conviction Relief, 5/19/20.

[16]St. Rec. Vol. 2 of 12, Order, 10/23/20.

[17]*Id*., at p. 1.

[18]*Id.*, at p. 2.

[19]*Id.*

penetrated was irrelevant.[20]  The Trial Court found that Doucet's father's affidavit showed that defense counsel interviewed him and planned to call him as a witness, but was prevented from doing so after the father suffered a stroke.[21]  It further found that the father's desired statements were testified to at trial by Doucet's mother or were irrelevant.[22]  The Trial Court concluded that defense counsel performed to a high standard and that Doucet did not suffer any prejudice from counsel's representation.[23]

The Louisiana Fifth Circuit denied Doucet's related writ application.[24]  The court found that the Trial Court correctly applied the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded that counsel's performance did not fall below an objective standard of reasonableness.[25]  The court found no error in the Trial Court's rulings as to the remaining claims.[26] The Louisiana Supreme Court denied Doucet's related writ application finding he failed to show he received ineffective assistance of counsel under *Strickland*.[27]

---

[20]*Id.*

[21]*Id.*

[22]*Id*

[23]*Id*

[24] St. Rec. Vol. 11 of 12, 5th Cir. Order, 20-KH-420, 12/2/20; 5th Cir. Writ Application, 20-KH-42011/20/20.

[25]*Id.*, at p. 2.

[26]*Id.*, at pp. 6-10.

[27]*Vannoy v. Doucet*, 313 So. 3d 264 (La. 2021) (per curiam); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 20-KP-1483, 4/7/21; La. S. Ct. Writ Application, 20 KP 01493, 12/22/20.

## II.    Federal Habeas Petition

On February 3, 2021, Doucet filed his original petition for federal habeas corpus.[28]  Doucet raises the following claims for relief: (1) the Trial Court erred in allowing the jury to view S.D.'s drawing during deliberations; (2) insufficient evidence supports his conviction; (3) ineffective assistance of counsel for failing to (a) retain a medical expert to rebut Dr. Jackson's testimony; (b) investigate *Brady* evidence; and (c) interview witnesses.[29]

The State filed a response conceding that Doucet's petition is timely.[30]  The State claims that Doucet failed to exhaust his first claim and that is it technically procedurally barred.  It claims that all of Doucet's claims are meritless.  Doucet filed a traverse reiterating his claims.[31]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which was filed in this Court under the mailbox rule on February 3, 2021.[33]  The threshold questions on habeas review under the amended statute are

---

[28]Rec. Doc. No. 1.

[29]Rec. Doc. No. 1-1, p. 14.

[30]Rec. Doc. No. 17.

[31]Rec. Doc. No. 19.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Doucet's petition was electronically filed on February 3, 2021.

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Doucet's federal petition was timely filed. The States has urged that Doucet failed to exhaust state remedies with respect to his first claim because he only raised a state law claim before the state courts and did not fairly present a federal constitutional claim. The State continues that, because Doucet can no longer litigate his federal claim in state court, his claim is technically exhausted and technically procedurally barred. The State concedes that Doucet's remaining claims are exhausted. Doucet responds that he attempted to incorporate federal law when he presented the issue on direct appeal, and, further, he should not be held accountable for his appellate counsel's shortcomings.

To the extent that Doucet's first claim could be considered unexhausted or procedurally defaulted, the claim does not entitle him to federal habeas relief and will be addressed without need for complete exhaustion of state remedies. *See* 28 U.S.C. § 2254(b)(2).

## IV.    <u>Standards for a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fair minded disagreement' on the question." *White v. Woodall*, 572 U.S.415, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law

if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Allowing Jury to View Drawings During Deliberations (Claim No. 1)

Doucet claims that the Trial Court committed reversible error in allowing the jury to view S.D's drawing, which included testimonial evidence, during deliberations.  He claims that her

drawings amounted to testimonial evidence and allowing the jury to view them during deliberations violated, not only Louisiana law, but also his right to a fair trial.

The State responds that Doucet's state law claim is not cognizable on habeas review. The State argues that, to the extent that Doucet raises due process and a confrontation clause claim, he is not entitled to relief because allowing the jury to view the drawings during deliberations was harmless error. Doucet clarifies in his traverse that he does *not* contend that the drawings violated his right to confrontation.[34]

On direct appeal, both Doucet and his assigned counsel raised a claim that allowing the jury to view the drawings during deliberations violated La. Code Crim. P. art 793.[35] In the last written decision, the Louisiana Fifth Circuit found that the one page document included several drawings as well as numerous written words, and that the Trial Court erred in allowing the jury to view the document during deliberations.[36] The court found the "error was harmless in that the exhibit did not depict what occurred during the crimes themselves or any other significant fact nor did it bear directly on an element of the crime."[37] The court concluded that a rational trier of fact could have found the evidence sufficient to convict Doucet without viewing the document.[38]

---

[34] Rec. Doc. No. 19, p. 4.

[35] La. Code Crim. P. art. 793(A) provides in pertinent part:

> Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

[36] *Doucet*, 237 So. 3d at 609.

[37] *Id.* (citation omitted).

[38] *Id.*

To the extent Doucet argues that the state courts' denial of relief violated Louisiana law relating to evidence a jury can take into the jury room during deliberations, federal habeas review does not lie for errors of state law. *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011); *see Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted). As a result, Doucet is not entitled to habeas relief even if the state trial court violated La. Code Crim. P. art. 793. *McKinney v. Warden, Louisiana State Penitentiary*, No. 08-CV-1263, 2012 WL 1424506, at *8 (W.D. La. Mar. 14, 2012) ("The habeas statute allows a federal court to issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody and in violation of the Constitution or laws or treaties of the United States. The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Accordingly, any violation of La. C. Cr. P. art. 793 is not a basis for relief." (citation and quotation marks omitted)), *report and recommendation adopted*, 2012 WL 1429385 (W.D. La. Apr. 23, 2012).

This Court's analysis must instead focus on due process considerations, which requires that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986). The Due Process Clause guarantees an accused the right to an impartial jury that will determine guilt based on the evidence and the law as instructed, rather than on preconceived notions or extraneous

information.  *Morgan v. Illinois*, 504 U.S. 719, 726-27, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992);

*Patton v. Yount*, 467 U.S. 1025, 1037 n.12, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984).  Doucet fails

to show that S.D.'s drawings, which were admitted into evidence, were extraneous information.

Furthermore, Doucet cited no federal law in support of his argument that allowing the jury to use

a witness' admitted drawings and writings during deliberations violates the right to due process.

Absent Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state

courts' decision cannot be contrary to, or an unreasonable application of, clearly established

federal law, rendering federal habeas relief unwarranted.  *See Woods v. Donald*, 575 U.S. 312, 135

S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("Because none of our cases confront 'the specific

question presented by this case,' the state court's decision could not be "contrary to" any holding

from this Court.") (citing *Lopez v. Smith*, 574 U.S. 1, 135 S. Ct. 1, 4, 190 L. Ed. 2d 1 (2014) (per

curiam)); *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008)

(quotation omitted) ("Because our cases give no clear answer to the question presented, let alone

one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly

established Federal law."); *Pierre v. Vannoy*, 891 F.3d 224, 228 (5th Cir. 2018) ("Without a

Supreme Court case holding that the State's unknowing use of false testimony violates the Due

Process Clause, Pierre cannot show that the Louisiana Supreme Court unreasonably applied clearly

established federal law as determined by the Supreme Court of the United States."); *Higginbotham*

*v. Louisiana*, 817 F.3d 217 (5th Cir. 2016) (No violation of clearly established law where "the

Supreme Court does not appear to have addressed this issue or a 'materially indistinguishable' set

of facts"); *Gomez v. Thaler*, 526 F. App'x 355, 359-60 (5th Cir. 2013) (citing *Van Patten*, 552 U.S.

at 126, 128 S. Ct. 743) (When no Supreme Court precedent directly addressed the presented issue,

it could not be said that the state court unreasonably applied clearly established federal law.). Indeed, several courts have rejected claims similar to that raised by Doucet in this petition on that basis. *Sharp v. Warden*, *Louisiana State Penitentiary*, Civ. No. 08-0989-P, 2011 WL 4551166, at *11 (W.D. La. Sept. 6, 2011) (rejecting petitioner's claim that the trial court's violation of Article 793 deprived him of due process where petitioner failed to cite to "any clearly established Supreme Court precedent that bars jurors in criminal trials from viewing written evidence, as Section 2254(d) requires for relief on such a claim."), *order adopting report and recommendation*, 2011 WL 4550938 (W.D. La. Sept. 29, 2011); *Gray v. Tice*, Civ. No. 17-71 Erie, 2019 WL 824045, at *18 (W.D. Pa. Feb. 21, 2019) (petitioner failed to show that trial court's decision to permit jury, during its deliberation, to review three threatening letters petitioner sent to victims did not violate his right to due process where he failed to show the state court's determination was contrary to or an unreasonable application of due process precedent).

Accordingly, the denial of relief on this issue by the state courts was not contrary to, or an unreasonable application of, Supreme Court law. Doucet is not entitled to federal habeas corpus relief as to this issue.

## VI.    **Insufficient Evidence (Claim No. 2)**

Doucet contends that the evidence was insufficient to support his conviction for aggravated rape of a juvenile under thirteen years of age. Doucet argues that S.D. fabricated her allegations and was coached prior to testifying at trial. He claims that the jury erroneously determined that her testimony was credible. The State argues that the evidence that was presented at trial was sufficient to establish each element of the crime.

The Louisiana Fifth Circuit addressed the sufficiency of the evidence on direct appeal. The Louisiana Fifth Circuit, relying on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), found a rational trier of fact could have found that the evidence was sufficient to support Doucet's conviction. The Louisiana Supreme Court denied relief without assigning reasons.

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is set forth in *Jackson*, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent Doucet relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson*

standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Doucet was charged with and convicted of aggravated rape of a child under the age of thirteen.  At the relevant time, aggravated rape (now designated as first degree rape), was defined in relevant part as anal, oral or vaginal sexual intercourse with a victim under the age of thirteen.  La. Rev. Stat. § 14:42(A)(4).  Under Louisiana law, for a rape to occur, "[e]mission is not necessary, and any sexual penetration ... however slight, is sufficient to complete the crime."  La. Rev. Stat. § 14:41(B).  Oral sexual intercourse is defined in pertinent part as the "touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender" or as the "touching the anus or genitals of the offender by the victim using the mouth or tongue of the victim."  La. Rev. Stat. § 14:41(C)(1), (2).

Furthermore, in Louisiana, the testimony of a sexual assault victim is sufficient to support a requisite factual finding.  *State v. Demery*, 165 So.3d 1175, 1180 (La. App. 2d Cir. 2015).  The victim's testimony alone is sufficient to establish the elements of the offense, even when the State does not introduce medical, scientific, or physical evidence to prove commission of the offense by the defendant.  *State v. Ponsell*, 766 So.2d 678, 682 (La. App. 2d Cir. 2000); *State v. Johnson*, 706 So. 2d 468, 475 (La. App. 4th Cir. 1997).

At trial the jury heard testimony from multiple witnesses. S.D. testified that, when she was eight years old, Doucet, who she referred to as "T-Bird," visited her family at their home in Carriere, Mississippi.[39] According to S.D., Doucet came into her room and forced her pants off and inserted his "crotch" inside of her "crotch."[40] She recalled that it was painful.[41] Doucet threatened S.D., covered her mouth and slapped her.[42] When the assault was over, Doucet threatened to beat S.D. if she told anyone.[43] S.D. testified that she was scared for her life, and that she did not tell anyone because she was scared and did not have the courage.[44] S.D. testified that there was more than one incident at her house in Mississippi.[45] She recalled a second incident at her paternal grandparent's home in Louisiana.[46] S.D. was sleeping on the floor of her grandparents' living room.[47] Doucet came out of the guest room and carried her to the backyard to the shed.[48] He pinned her against a barrel and again put his "crotch" inside of her.[49] S.D.

---

[39] St. Rec. Vol. 4 of 12, Trial Transcript, at pp. 44-45, 11/29/16.

[40] *Id.*, at pp. 46-47.

[41] *Id.*, at p. 48.

[42] *Id.*, at p. 46.

[43] *Id.*

[44] *Id.*, at pp. 46, 48.

[45] *Id.*, at pp. 48-49.

[46] *Id.*, at p. 49.

[47] *Id.*, at p. 51.

[48] *Id.*

[49] *Id.*, at pp. 51-52.

recalled that this incident hurt more than the first time.[50]  Afterwards, she ran back in the house and hid under her blanket.[51]

S.D. testified that other incidences occurred in the guest room of her grandparents' home although she could not recall the specifics.[52]  S.D. testified about a third incident when she put her mouth on Doucet's "crotch" while they were in the bathroom.[53]  She recalled that it made her uncomfortable and made her gag.[54]  She recalled that Doucet made her kiss him a few times on the mouth.[55]  S.D. also testified that Doucet put his mouth on her "crotch" and her breasts, and sucked her breasts.[56]  S.D. testified that the last time Doucet "abused" her was one of the last times he visited when she was ten years old.[57]  S.D. testified that she believed she was twelve years old when she told her mom about the abuse.[58]  She explained that she felt happy that she was not seeing Doucet anymore.[59]  S.D. testified that she was scared that Doucet would be found not guilty

---

[50]*Id.*, at p. 52.

[51]*Id.*, at p. 53.

[52]*Id.*, at pp. 53-54.

[53]*Id.*, at pp. 54-55.

[54]*Id.*, at p. 55.

[55]*Id.*

[56]*Id.*, at pp. 55 -56.

[57]*Id.*, at p. 57.

[58]*Id.*, at pp. 57-58.

[59]*Id.*, at p. 58.

and would go free and sneak into her house and kill her.[60]  S.D. testified that she suffers from depression, once cut herself, and had suicidal thoughts before trial.[61]

Deslie Bonano, S.D.'s psychotherapist, testified that S.D. became a patient after she revealed the sexual abuse to her mother.[62]  Bonano testified that S.D. becomes very distraught an ashamed and embarrassed when they discuss the sexual abuse.[63]  Bonano confirmed that S.D. discussed killing herself.[64]

Dr. Jamie Jackson, a child abuse pediatrician, testified that she examined S.D. on September 3, 2015.[65]  Dr. Jackson testified that S.D. gave a clear history of sexual abuse by Doucet involving penile, vaginal, digital-vaginal, and oral breast contact.[66]  S.D. told Dr. Jackson that Doucet shoved his "private" into her "private" and indicated to the body parts on a diagram.[67]  While examination revealed that S.D.'s hymen was normal, Dr. Jackson explained that such a finding is not unusual, especially in cases of delayed disclosure.[68]  According to Dr. Jackson, physical findings are found in only five to ten percent of child sexual abuse cases.[69]  Dr. Jackson

---

[60]*Id.*, at p. 70.

[61]*Id.*, at pp. 60-61, 70.

[62]*Id.*, at pp. 101-104.
[63]*Id.*, at p. 105.

[64]*Id.*, at p. 108.

[65]St. Rec. Vol. 6 of 12, Trial Transcript, at pp 8, 13, 11/30/16.

[66]*Id.*, at p. 18.

[67]*Id.*

[68]*Id.*, at pp. 19-20.

[69]*Id.*, at p. 22.

testified that depression and cutting can be a result of sexual abuse.[70]  She diagnosed S.D. with child sexual abuse based on S.D.'s history.[71]

Robin Bixler, a forensic interviewer of Kids Hub Child Advocacy Center in Hattiesburg, Mississippi, testified that she interviewed S.D..[72] The videotaped interview was played for the jury.[73]

M.D. testified about the shed at his parents' home located at 5049 Richland, and recalled that that large barrels were stored in it.[74]  He recalled that Doucet lived at the house at some point.[75] M.D. explained that Doucet would regularly visit M.D. in Mississippi.[76]  M.D. banned Doucet from M.D.'s house after an incident involving Doucet's girlfriend during which Doucet almost hit M.D. with his vehicle.[77]  M.D. recalled that S.D. told him and B.D. about the sexual abuse after they moved to a different house because she felt safe as the house was gated and Doucet did not know where they lived.[78]

B.D. testified that Doucet "mostly" lived with his parents when S.D. was between the ages of eight and ten.[79]  She testified that her husband banned Doucet from their home after a physical

---

[70]*Id.*, at p. 25.

[71]*Id.*, at p. 29.

[72]*Id.*, at pp. 35, 41-42.

[73]*Id.*, at pp. 42, 45.

[74]*Id.*, at pp. 55-57.

[75]*Id.*, at p. 57.

[76]*Id.*, at p. 59.

[77]*Id.*, at p. 60.

[78]*Id.*, at p. 70.

altercation at their house.[80]  On August 25, 2015, S.D. came into the kitchen and told B.D. what Doucet did to her.[81]  S.D. told B.D. that she was brave enough to tell her because they had moved a month before and Doucet could not find her.[82]  B.D. explained that S.D. does not like to talk about what happened as it makes her feel uncomfortable and embarrassed, but what she has said about the sexual abuse has been consistent.[83]

In his defense, Doucet claimed he was never alone with S.D., and that he never inappropriately touched her.[84]  Doucet testified that he never kissed S.D. or put his mouth on any part of her body.[85]  Doucet claimed S.D., M.D. and B.D. were lying.[86]

Based on the verdict, the jury apparently found that the State's evidence and testimony were the more credible version of the facts and rejected Doucet's testimony.  Doucet's argument in this regard is essentially that the jury should have believed his testimony and disbelieved S.D. testimony.  In short, the trial record reflects a classic credibility contest in witness testimony, including the inferences to be drawn from and the weight to be assigned to the evidence.  These are functions the law assigns to the jury, which resolved S.D.'s assertions against him.  *Jackson* limits this court's review to the evidence before the trier of fact and does not allow this court to

---

[79]*Id.*, at p. 95.

[80]*Id.*, at p. 96-97.

[81]*Id.*, at pp. 98-100.

[82]*Id.*, at p. 102.

[83]*Id.*, at pp. 105-06.

[84]*Id.*, at pp. 229-30.

[85]*Id.*, at p. 230.

[86]*Id.*, at p. 231-32, 236.

reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). Specifically, determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield v. Jones*, 903 F.Supp. 1011, 1018 (5th Cir. 1995) (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). Thus, the jury's findings were reasonable and supported by the evidence and testimony.

Viewing the evidence in the light most favorable to the prosecution, there was more than sufficient evidence upon which a rational trier of fact could have found the essential elements of aggravated rape of a child under thirteen years of age were established. Because the state courts' rejection of Doucet's insufficient evidence claim is not an unreasonable application of Supreme Court precedent to the facts of this case, his claim is without merit and does not warrant federal habeas relief.

## VII.    Ineffective Assistance of Counsel (Claim No. 3)

Doucet claims ineffective assistance of trial counsel in failing to retain a medical expert to rebut the State's medical expert's testimony. He further claims that his trial counsel failed to investigate *Brady* evidence, specifically, S.D.'s allegation that another individual sexually abused her. Finally, he claims that his counsel was ineffective for failing to secure the testimony of his father, P.D., who suffered a stroke before trial. The State responds that Doucet fails to establish either deficient performance or resulting prejudice.

Doucet raised these claims in his application for post-conviction relief. The Trial Court found that Doucet failed to show that Dr. McCubbin was available to testify at Doucet's trial or that his testimony would have been admissible.[87] The Trial Court further found that Dr. McCubbin's proposed testimony that the victim's hymen would have been damaged if it was violently penetrated was irrelevant as any sexual penetration is sufficient to complete the crime.[88] The Trial Court found that Doucet's father's affidavit showed that he was interviewed by defense counsel and that the plan was to call him as a witness.[89] It found that the father's stroke could not be attributed to defense counsel, and further, the desired statements by his father were testified to by his mother or were irrelevant.[90] The Trial Court concluded that Doucet failed to meet both prongs of *Strickland*.[91] The Louisiana Supreme Court found that Doucet failed to show he received ineffective assistance of counsel under *Strickland*.[92]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). In *Strickland v. Washington, 466 U.S. 668 (1984)*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v.*

---

[87] St. Rec. Vol. 2 of 12, Order, at p. 1, 10/23/20.

[88] *Id.*, at p. 2.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] *Doucet*, 313 So. 3d at 264; St. Rec. Vol. 12 of 12, La. S. Ct. Order, 20-KP-1483, 4/7/21.

*Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992).  In

deciding ineffective assistance claims, a court need not address both prongs of the conjunctive

*Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet

either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct

failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v.*

*Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).   "The defendant must show that counsel's

representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-

88.  The analysis of counsel's performance must take into account the reasonableness of counsel's

actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*,

466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must

"judge . . .  counsel's challenged conduct on the facts of the particular case, viewed as of the time

of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466

U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls

within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland,*

466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was

unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at

689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless

clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th

Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th

Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).   In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).   Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690.  This Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309

(5th Cir. 2008); *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

## A.    Constructive Denial of Counsel

Doucet initially suggests that he was constructively denied counsel because his trial counsel failed to subject the State's case to any meaningful adversarial testing.  Doucet relies on defense counsel's affidavit in which he states he was not adequately prepared for trial due to the denial of a motion for continuance and the late disclosure of *Brady* evidence.[93]

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him.  The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  *Cronic*, 466 U.S. at 654 n. 11.  The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not."  *Cronic*, 466 U.S. at 658-59 (citations omitted).  Only

---

[93]Rec. Doc. No. 1-7, p. 8.

in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for *Cronic* to apply "the attorney's failure must be complete." *Bell*, 535U.S. at 697. "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. *Bell*, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697. The *Cronic* standard applies only when counsel has entirely failed to challenge the prosecution's case. *Id.* at 697; *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002); *Burdine v. Johnson,* 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. *Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998) (quoting *Childress*, 103 F.3d at 1228-29).

The issue of the constructive denial of counsel under *Cronic* is a mixed question of law and fact. *French v. Jones*, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw). Thus, the question before this court is whether the state courts' denial of relief

on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The state courts' denial of relief on this issue was not specifically based on *Cronic*. The state courts instead addressed Doucet's ineffective assistance of counsel claims under the standards of *Strickland* itself based on the actual performance of his counsel. Nevertheless, Doucet has not shown error in the application of that standard or that his claims should have been evaluated or would have been evaluated differently under the *Cronic* presumption of prejudice.

Initially, the record does not demonstrate a complete failure by his trial counsel entirely to oppose the prosecution's case. On the contrary, the state court record reflects that Doucet's retained counsel subjected the prosecution's case to meaningful adversarial testing at each stage. Counsel filed various pretrial motions.[94] Counsel sought to exclude certain evidence.[95] The transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence. The trial transcript reflects that Doucet's trial counsel actively challenged the State's evidence throughout the trial. There is nothing in this record to suggest that Doucet's trial counsel was "inert" in his representation at trial. *Jackson v. Johnson*, 150 F.3d at 525). Doucet's assertions under *Cronic* are based on the same reasonable tactical decisions made by counsel that are addressed under *Strickland* by this court and by the state courts. Counsel's decision not to pursue baseless and irrelevant defenses

---

[94]St. Rec. Vol. 1 of 12, Motion to Require Unanimous Jury Verdict, 7/21/16; Motion to Quash the Indictment, 7/21/16; Motion for Pretrial Disclosure of Evidence of Independent and Separate Offenses, Wrongs or Acts, 7/21/16; Motion for Impeaching Evidence, 7/16/21; Motion for Criminal Record and Pending Charges of All State Witnesses, 7/21/16.

[95]St. Rec. Vol. 1 of 12, Defense's Objection to State's La. C. E. Art. 404(B), 412.2 Evidence and Res Gestae, 8/22/16; Motion in Limine to Exclude Testimonial Hearsay Statements of Child witness, 11/15/16; Motion for Daubert Hearing Concerning Evidence and Testimony of Purported Forensic Evidence Expert on Child Sexual Abuse and for the Exclusion of Unreliable, Irrelevant Pseudo-Scientific Evidence, 11/15/16; Defense's Objection to State's La. C. E. Article 404(B) Motion, 11/23/16.

does not equate to a failure of representation under *Cronic*. *See United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003) (no "constructive" denial of effective assistance of counsel or presumption of prejudice where there was no complete absence of counsel, no actual conflict, no state interference, and defense attorney actively participated in the criminal proceedings); *see Cronic*, 466 U.S. at 657 n.21, 104 S.Ct. 2039 ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance.").

Doucet has not established that he was constructively denied trial counsel under the *Cronic* standard. The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. His challenge to trial counsels' representation of him will be further addressed below under *Strickland*.

### B.    Trial Counsel's Failure to Retain a Medical Expert

Doucet claims that his counsel was ineffective for failing to retain a medical expert to rebut Dr. Jackson's testimony. Doucet claims that an expert, Dr. McCubbin, could have contradicted Dr. Jackson's testimony that a normal hymen is common in prepubescent victims of penile sexual abuse. Doucet again relies on his trial counsel's affidavit wherein his counsel states that, due to the denial of a motion to continue, he was unable to hire an expert to rebut the State's expert.[96] The State responds that Doucet fails to show deficient performance nor resulting prejudice.

To prevail on an ineffective assistance claim based upon uncalled witnesses, including an expert witness, a habeas petitioner must show that he was prejudiced by counsel's decision not to call an expert. Thus he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. There

---

[96]Rec. Doc. No. 1-7, p. 8.

are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689. In some cases, counsel would be considered ineffective for failing to consult with or call an expert but state courts would have a wide latitude in making such a determination. *Harrington*, 131 S.Ct. at 789.

In order to demonstrate prejudice arising from failure to call witnesses, the petitioner must show that the witness would have testified at trial and that the testimony would have been favorable. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). There must be a reasonable probability that the uncalled witnesses would have made a difference to the result at trial. *Id.* at 603. Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). Moreover, with respect to calling experts, it is clear that *Strickland* does not require for every prosecution expert an equal and opposite expert from the defense. *See Harrington*, 131 S.Ct. at 791 (It is well within the bounds of a reasonable judicial determination for a state court to conclude that defense counsel could follow a strategy that did not require the use of experts). Additionally, the United States Supreme Court has recognized that "[i]n many instances, cross examination [of the prosecution's expert] will be sufficient to expose defects in an expert's presentation." *Id.* at 791. "[A] decision to attack the state's expert witnesses on cross-examination rather than calling additional experts can be a part of a reasonable trial strategy." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007).

In 2020, nearly four years after Doucet's trial, Dr. McCubbin, a retired obstetrician/gynecologist, reviewed Dr. Jackson's testimony.[97]  In his report, Dr. McCubbin, based on his education, training and experience, opined that the "prepubertal hymen is like thin paper" that does not stretch, and, "[h]ad S.D. experienced forceful penile penetration of her hymen during prepubescence at age eight to ten, there should be a history of pain and bleeding as well as healed evidence of this forceful penetration."[98]  He further opined that a tear would cause pain and bleeding and that S.D. should have healed evidence of forceful penetration.[99]

Doucet, however, has not shown that Dr. McCubbin was available to testify at his trial. The requirement that a petitioner present evidence that a proposed witness was available to testify at trial and would have done so is a prerequisite to the granting of relief, not "a matter of formalism."  *Woodfox*, 609 F.3d at 808.  Rather, Dr. McCubbin states that he would testify at a post-conviction hearing or a new trial.[100]  Furthermore, even if Dr. McCubbin was available to testify when Doucet's case went to trial, Doucet has not shown that he could pay Dr. McCubbin's fee or that Dr. McCubbin was willing to testify at the time of Doucet's trial in November and December 2016.  Therefore, Doucet fails to meet his burden of proof with respect to this claim.

Doucet claims that his counsel should have requested funds to hire an expert.  The law, however, is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).  When an

---

[97]Rec. Doc. No. 1-7, pp. 19-24.

[98]*Id*., at pp. 22, 24.

[99]*Id.*, at p. 24.

[100]*Id.*, at p. 19.

indigent defendant requests a non-psychiatric expert, that defendant "must demonstrate something more than a mere possibility of assistance from a requested expert." *Id.*

Here, Doucet fails to show a reasonable probability that the Trial Court would have granted a motion for expert funding. Notably, Doucet was represented at trial by two *retained* attorneys. Further, Doucet admits that his family had funds available for an expert witness, and, in fact, had given his defense counsel a retainer for an expert.[101] Thus, Doucet's indigent status was questionable as was his eligibility for State funded services.

Additionally, Doucet has not shown that his counsel's failure to retain a medical expert constituted deficient performance. The record reflects that defense counsel sought to exclude S.D.'s statements to Dr. Jackson.[102] He also challenged Dr. Jackson's proposed testimony and conclusions as unreliable, unscientific, and irrelevant.[103] He requested a continuance of trial to retain an expert, although the motion was denied.[104] The fact that counsel was not successful in requesting a continuance does not render counsel ineffective. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.");

---

[101]Rec. Doc. No. 19, p. 12.

[102]St. Rec. Vol. 1 of 12, Motion in Limine to Exclude Testimonial Hearsay Statements of Child Witness, 11/15/16.

[103]St. Rec. Vol. 1 of 12, Motion for Daubert Hearing Concerning Evidence and Testimony of Purported Forensic Expert on Child Sexual Abuse and for the Exclusion of Unreliable, Irrelevant Pseudo-Scientific Evidence, 11/15/16.

[104]St. Rec. Vol. 1 of 12, Motion for Continuance, 11/21/16; Minute Entry, 11/28/16; St. Rec. Vol. 5 of 12, Hearing Transcript, 11/28/16.

Defense counsel vigorously cross-examined Dr. Jackson.[105]  The cross-examination by defense counsel demonstrated that she was well-prepared and held the knowledge necessary to attack Jackson's testimony as well as the testimony of the other witnesses.  *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) ).  Dr. Jackson admitted on cross-examination that she could not speak to the veracity of S.D.'s allegations and was not a lie detector.[106]  Dr. Jackson further admitted that it was possible that the sexual abuse did not happen.[107]  She also testified that she had had one case where the abuser was someone other than who the victim identified.[108]  Dr. Jackson also admitted that there was no physical evidence of sexual abuse present in S.D.'s case.[109]

Based on the record, it is reasonable to conclude that defense counsel strategically chose to undermine the State's evidence through cross-examination at trial after the motions to exclude the testimony and for a continuance to retain an expert were denied.  "Unless a crucial and important legal issue rests on the reliability of scientific evidence, ... counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision."  *See Bowers*, 497 F.3d at 472.  The decision not to call an expert under the circumstances of this case was well within counsel's trial strategy discretion.  *See Dees*,

---

[105]St. Rec. Vol. 6 of 12, Trial Transcript, at pp. 25-34, 11/30/16.

[106]*Id.*, at pp. 26, 32.

[107]*Id.*, at p. 32.

[108]*Id.*, at p. 33.

[109]*Id.*, at pp. 33-34.

904 F.2d at 454-55 (counsel's only duty is to assure that he has the expertise necessary to cross-examine the State's experts.).

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Doucet is not entitled to relief on this claim.

### C.   **Investigate *Brady* Evidence**

Doucet next claims that his counsel was ineffective in failing to investigate *Brady* evidence disclosed by the State days prior to trial. Specifically, the week before the scheduled trial, the State disclosed evidence that S.D. alleged that she had been sexually abused by a second person, "Devin." Doucet claims that his counsel failed to investigate Devin and failed to determine if S.D. was protecting Devin by falsely accusing Doucet. The State responds that Doucet fails to show that defense counsel's investigation was inadequate or that any additional investigation would have led to a different outcome at trial.

On November 23, 2016, the State provided a notice of information in which it stated that S.D. claimed that when she was ten years old, "Devin," T.P.'s teenage son came into A.D.'s room and covered himself and S.D. with a blanket.[110] He then asked her to "lick his crotch," which she did briefly.[111] According to the notice, S.D. believed that Doucet "put Devin up to it."[112]

Defense counsel, Jerome Matthews, Jr., states in his affidavit that he was not adequately prepared for trial due to late disclosure of *Brady* evidence.[113] Doucet claims that his counsel failed

---

[110]Rec. Doc. No. 1-7, p. 4.  Co-counsel, Mandie Landry, did not execute an affidavit.

[111]*Id.*

[112]*Id.*

[113]Rec. Doc. No. 1-7, p. 8.

to investigate Devin, made no inquiry into whether S.D. was attempting to protect Devin by falsely accusing Doucet, and did "nothing in the three days before trial" to investigate the new evidence.[114] Matthews, however, does not state that he did not do *any* investigation of S.D.'s statement related to Devin. Rather, he states he was "unable to do an adequate investigation into the surrounding facts."[115]

" 'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> <u>specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.' " *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011) (emphasis added, citation omitted). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what <u>exculpatory</u> evidence further investigation would have revealed. *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Doucet failed to establish that counsel's investigation was inadequate in any respect. In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took after the State disclosed S.D.'s accusation against Devin. *Netter v. Cain*, 2016 WL 7157028, at *11

---

[114]Rec. Doc. No. 1-1, p. 42.
[115]Rec. Doc. No. 1-7, p. 8.

(E.D. La. Oct. 6, 2016), *report and recommendation adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016). While Doucet claims that his counsel could not review the CAC interview of S.D., the record shows that Doucet viewed the videotape with his counsel on October 28, 2016.[116]

Nor has Doucet identified any exculpatory evidence that would have been discoverable through additional pretrial investigation. Doucet merely speculates that S.D. falsely accused him to protect Devin.[117] Such bare speculation is not sufficient to meet his burden of proof. *See Thomas v. Cain*, Civ. No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009). Because Doucet has not identified any additional beneficial evidence that could or would have been discovered in a more thorough investigation, his claim is wholly speculative and, therefore, necessarily fails. *See*, *e.g.*, *Perry v. Louisiana*, Civ. Action No. 19-13002, 2020 WL 1892794, at *19 (E.D. La. Mar. 30, 2020), , 2020 WL 1889188 (E.D. La. Apr. 16, 2020); *Eaglin v. Louisiana*, Civ. Action No. 19-9659, 2020 WL 475770, at *25 (E.D. La. Jan. 7, 2020), *report & recommendation adopted*, 2020 WL 474923 (E.D. La. Jan. 20, 2020), *certificate of appealability denied*, 2020 WL 4592908 (5th Cir. Aug. 6, 2020).

Doucet also appears to claim that his counsel was ineffective in failing to subpoena Devin to testify in order to impeach S.D.'s credibility. However, Doucet offers only self-serving, speculative and conclusory allegations that Devin, a minor, would have testified and would have done so in a manner beneficial to the defense. Therefore, he has failed to meet his burden of proof

---

[116]St. Rec. Vol. 1 of 12, Minute Entry, 10/28/16.

[117]Doucet's claim that S.D.'s statement about Devin was "almost exact" to that made against Doucet "right down to the actions, location, and ages," *see* Rec. Doc. No. 19, p. 20, is patently false. S.D. testified that Doucet forced her to have vaginal-penile intercourse with him on two occasions, once in her bedroom in Mississippi and once in a shed in Louisiana, when she was between the ages of eight and ten years old. She also recalled an occasion in the bathroom where Doucet forced her to have oral-penile intercourse. The incident with Devin occurred in her brother's room when she was ten years old and involved oral-penile intercourse.

with respect to this claim.  *See*, *e.g.*, *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. No. 073223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032-n, 3:03-CR-0188-N(09), 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, Civ. No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

At trial, defense counsel, in an attempt to attack S.D.'s credibility, elicited testimony from S.D. relating to her allegation against Devon.  S.D. reluctantly testified that Devin made her lick his "crotch."[118]  S.D. admitted that she did not want Devin to go to jail and worried that Devin and her brother, who was Devin's best friend, would be mad at her.[119]  Defense counsel also elicited testimony from Dr. Jackson that, while Jackson asked S.D. whether "anything happened like this with someone else," S.D. did not mention Devin to her.[120]

---

[118] St Rec. Vol 5 of 12, Trial Transcript, at pp. 93-95, 11/29/16.

[119] *Id.*, at pp. 95-98.

[120] St Rec. Vol 6 of 12, Trial Transcript, at pp. 931-32, 11/30/16.

Doucet has not shown that his counsel performed deficiently or any resulting prejudice. The state courts' denial of relief of these claims was not contrary to, or an unreasonable application of federal law. Thus, Doucet is not entitled to relief on these claims.

### D.    Secure Witness Testimony

Finally, Doucet claims his counsel was ineffective for failing to "secure the testimony" of his father, P.D., Sr..[121]  Doucet asserts that his father was slated to testify at trial, but suffered a stroke "well before trial" that rendered him incapable of doing so.[122]  Doucet appears to claim that his counsel should have deposed his father in order to present his testimony at trial.  Doucet claims his father would have testified that Doucet never visited the house before 10:00 a.m., and, further, that P.D., Sr., always had the sole key to the shed on his person.  The State responds that defense counsel interviewed P.D. and had no reason to anticipate his stroke.  It further argues that P.D.'s anticipated testimony is cumulative and/or irrelevant and, as such, Doucet fails to show prejudice.

In his May 28, 2020 affidavit, P.D., Sr., states that he suffered a stroke and that his condition worsened "[j]ust before trial" which prevented him from testifying at trial.[123]  The affiant states that Doucet did not live with him from June 25, 2011 through June 24, 2014.  He further states that it would have been impossible for Doucet to assault S.D. because (1) P.D., Sr., rises every morning at 5:00 a.m. and stays in the living room or kitchen until late morning; (2) the shed remained locked and he had the sole key to shed on him at all times; (3) the shed did not contain large barrels and was so cluttered that a person could barely walk inside; (4) his wife did not go to

---

[121]Rec. Doc. No. 1-1, p. 42.

[122]*Id.*, at pp. 42-43.

[123]Rec. Doc. 1-7, pp. 28, 30.

sleep until 8:00 a.m.; and (5) they moved from the residence in 2013.  P.D., Sr., also states that Doucet never slept at the house after he moved out and never visited the house before 10:00 a.m. He speculates that the volatile relationship between Doucet and M.D. and B.D. may have led to the false allegations.[124]  He states that M.D. caught Doucet and B.D. in bed together and threatened to retaliate against Doucet.[125]

"Depositions and other methods of preserving testimony are rare in criminal proceedings." *Clark v. Cain*, Civ. Action No. 15-cv-2834, 2018 WL 6594546 (W.D. La. Dec. 11, 2018), *report & recommendation adopted*, 2019 WL 982400, at *8 |(W.D. Feb 28, 2019), *certificate of appealability denied*, *Clark v. Vannoy*, 19, 30332, 2020 WL 6253333 (5th May 28, 2020), *cert. denied*, 141 S.Ct. 882 (2020).  Preservation of testimony in a criminal case is considered an "extraordinary step" and counsel's failure to preserve testimony is not grounds for habeas relief, particularly where there is no evidence of what a witness would have testified.  *Id.*

Doucet has not shown that his counsel's failure to preserve P.D., Sr.'s testimony was unreasonable, nor has he shown a reasonable probability that the proposed testimony would have altered the outcome of the trial.  Initially, a majority of proposed testimony would have been cumulative.

For instance, multiple defense witnesses testified that Doucet did not live with his parents at the time of the alleged crime.  D.D. testified that Doucet moved out in 2007 or 2008.[126]  She claimed that she could not recall a time when Doucet slept over at the same time as S.D., and, in

---

[124]*Id.*, at p. 28.

[125]*Id.*, at p. 29.

[126]St. Rec. Vol. 6 of 12, Trial Transcript, at p. 136, 11/30/16.

fact, claimed that Doucet never spent the night at her home after he moved out.[127]  A.D.V., Doucet's niece, testified that Doucet lived in Mississippi in 2010.[128]  T.P. testified that she and Doucet lived together from May 2010 until September 2014.[129]  She claimed that she and Doucet never slept at his parents' house and that they were together every night.[130]  Doucet testified that he moved to Mississippi in 2010 and lived there until 2014 and never slept at his parent's house after he moved out.[131]  He claimed he was never at his parents' house at the same time as S.D..[132]

Additionally, multiple witnesses testified that M.D. and Doucet had a contentious relationship due to Doucet's relationship with M.D.'s wife.  Doucet claimed that he had ongoing a sexual relationship with B.D. and that M.D. had previously caught them together.[133]  D.D. testified regarding the conflict between Doucet and M.D. over M.D.'s wife.[134]  R.D., Doucet's brother, claimed that M.D. had previously said that he was going to do "harmful things" to Doucet and planned to attack Doucet.[135]

The failure to present such cumulative evidence or duplicative testimony generally does not amount to ineffective assistance of counsel.  *Richards v. Quarterman*, 566 F.3d 553, 569 (5th

---

[127]*Id.*, at pp. 126, 136.

[128]*Id.*, at p. 205.

[129]*Id.*, at p. 208.

[130]*Id.*, at p. 209

[131]*Id.*, at pp. 224, 227, 234.

[132]*Id.*, at p. 233.

[133]*Id.*, at pp. 229, 232.

[134]*Id.*, at pp. 126-27.

[135]*Id.*, at pp. 166, 187.

Cir.2009); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir.2007) ("Counsel's decision not to present cumulative testimony does not constitute ineffective assistance.") (citing *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984).

While the proposed testimony regarding the sleep patterns of Doucet's mother and father, the condition of the shed, and the claim that P.D., Sr., was the only person with a key to shed would not have been cumulative testimony, Doucet has failed to demonstrate that there was a reasonable probability that preserving P.D., Sr.'s testimony for trial would have provided a different result. The testimony would have been of limited value as the close family relationship would have made his testimony inherently suspect. *See Talley v. Cain*, Civ. Action No. 08–3542, 2009 WL 916331, at *11 (E.D. La. Apr.6, 2009) (noting that alibi testimony from the petitioner's mother would have been "inherently suspect")).

Doucet has not established a reasonable probability that, but for failing to preserve P.D. Sr.'s testimony for trial, the outcome of the trial would have been different. The state courts' determination rejecting this claim was not contrary to or an unreasonable application of federal law. Doucet is not entitled to relief as to this claim.

## VIII. <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Timmy Doucet's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996).[136]

New Orleans, Louisiana, this 9th day of December, 2021.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[136]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.